## IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

|  |  |  |
|---|---|---|
| JANICE WEBB o/b/o Z.D., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No.  3:12-cv-1059-O |
| | § | |
| CAROLYN W. COLVIN, ACTING | § | |
| COMMISSIONER OF THE SOCIAL | § | |
| SECURITY ADMINISTRATION, | § | |
| | § | |
| Defendant. | § | |
| | § | |

## ORDER

The United States Magistrate Judge made Findings, Conclusions, and a Recommendation ("Recommendation") in this case.  Plaintiff Z.D. ("Plaintiff") filed objections.  Under 28 U.S.C. § 636(b)(1), the Court must review the pleadings, filings and records of the case and the Recommendation *de novo. See Montgomery v. Astrue*, No. 3:09-CV-1194-O, 2010 WL 3583380, at *1 (N.D. Tex. Sept. 13, 2010).[1]

In her objections, Plaintiff argues that the Magistrate Judge's conclusion that the Administrative Law Judge's ("ALJ") finding that Plaintiff had a marked, rather than an extreme, limitation in the health and physical well-being domain was not supported by substantial evidence. Objection 4–5, ECF No. 24.  In the domain of health and physical well-being, the ALJ considers the

---

[1]  The scope of judicial review of an Administrative Law Judge's decision to deny benefits is "limited to determining whether the decision is supported by substantial evidence in the record and whether the proper legal standards were used in evaluating the evidence." *Castillo v. Barnhart*, 325 F.3d 550, 551 (5th Cir.2003) (quoting *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir.1990)); *Montgomery*, 2010 WL 3583380, at *1.

"cumulative physical effects of physical or mental impairments and their associated treatments or therapies on [the claimant's] functioning" that were not considered in the evaluation of the claimant's ability to move about and manipulate objects.  20 C.F.R. § 416.926a(l).  Among the examples listed for this domain is "medical fragility requiring intensive medical care to maintain level of health and physical well being."  *Id.* § 416.926a(l)(4)(i)–(v).  These examples are non-exclusive and "do not necessarily describe a 'marked' or 'extreme' limitation." *Id.* § 416.926a(l)(4).

Plaintiff contends that she met the limitation listed in 20 C.F.R. § 416.926a(l)(4)(v) because she was "incredi[bly] medically fragile to the point where a common fever require[d] inpatient hospitalization."  Objection 5–6, ECF No. 24.  Although Plaintiff's Maple Syrup Urine Disease ("MSUD") is a permanent metabolic disorder that requires weekly blood tests and a special nutritional formula, treatment notes from her two hospitalizations on record show that she was hospitalized for conditions other than her MSUD, namely, bronchiolitis and RSV (an upper respiratory infection), ketonuria, and seizures.  *See* R. at 168, 206–1065, 1346.  On July 16, 2011, Dr. Justin Jordan, a physician at Children's Medical Center ("CMC"), opined that Plaintiff's edema, which was related to her MSUD, was "not likely the cause of her seizures."  R. at 1307.  Moreover, during routine follow-ups, Dr. Lewis J. Waber ("Dr. Waber"), Plaintiff's treating metabolic specialist, consistently found that Plaintiff was well-developed and well-nourished, and Dr. Waber noted that he had "no concerns" about her progress and was "pleased with how [Plaintiff] was doing." R. at 152–55, 205, 1160–65.  This evidence contradicts Plaintiff's statements regarding her alleged medical fragility.  The Court must defer to the Commissioner of Social Security's ("Commissioner") determination on this point because substantial evidence in the record supports the ALJ's finding that Plaintiff had a marked, rather than an extreme, limitation in the health and

physical well-being domain.  *See Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000) (providing that the court should not reweigh evidence in the record, try issues de novo, or substitute its judgment for the Commissioner's).

Plaintiff next contends that the Recommendation was erroneous because it affirmed the ALJ's findings that Plaintiff had no limitation in the domains of acquiring and using information, interacting and relating with others, and moving about and manipulating objects.  Objection 8–11, ECF No. 24.  Plaintiff claims that her mother's "uncontested testimony" showed that Plaintiff had marked limitations in these areas because, among other things, the mother testified that Plaintiff did "not respond to common words, yes/no commands," "never clapped and [could not] participate in patty cake or peek-a-boo games," was "only able to crawl when her levels [were] normal," and had "*never demonstrated any type of vocalization* to gain her mother's attention."  *Id.* (emphasis added); *see also* R. at 47–53.  However, on multiple occasions, Dr. Waber found that Plaintiff was developing normally and he was "pleased" with her progress.  R. at 152, 1160, 1288, 1290–92. Notably, on November 1, 2011, Dr. Waber stated that Plaintiff was "working on potty training" and had "good speech development," and appeared well-developed, well-nourished, and "active."  R. at 1288-89.  On July 16, 2011, while Plaintiff recovered from her ketonuria and seizures, a neurologist at CMC noted that Plaintiff was "up and playful" in the morning and could sit and stand without assistance.  R. at 1305.  The physician also found that "[d]evelopmentally, [Plaintiff was] on track with *a large vocabulary, speaking in occasional complete sentences*," and was "*walking [and] running normally*."  R. at 1306 (emphasis added).  Substantial evidence supports the ALJ's findings that she had no limitations in these domains.  Therefore, the Court finds that Plaintiff's objection to the Recommendation on this point is overruled.

Plaintiff also asserts that the Recommendation was erroneous in finding that the ALJ's credibility determination was supported by substantial evidence. Objection 11–15, ECF No. 24. The Fifth Circuit has held that courts should "accord great deference to the ALJ's credibility determination." *Spruill v. Astrue*, 299 F. App'x 356, 358 (5th Cir. 2008) (citing *Newton*, 209 F.3d at 459). "When an ALJ finds that a claimant lacks credibility, the ALJ must articulate reasons for discrediting the claimant's complaints," but her "explanation need not follow formalistic rules." *Id.* (citing *Falco v. Shalala,* 27 F.3d 160, 163–64 (5th Cir. 1994); *Abshire v. Bowen*, 848 F.2d 638, 642 (5th Cir. 1988)). Here, the ALJ determined that Plaintiff's "mother's statements concerning the intensity, persistence, and limiting effects of [Plaintiff's] symptoms [were] neither entirely credible, nor consistent with or supported by the preponderance of the medical and other evidence of record." R. at 22, 24–25. The record establishes that the mother's statements regarding Plaintiff's limitations were contradicted by objective medical evidence. For instance, while the mother testified that even when Plaintiff's amino acid levels were "normal," she could only crawl and "babble," and could stand only by holding on to something, on July 16, 2011, a neurologist at CMC found that she was up and playful, could stand without assistance, and was walking and running normally. R. at 52; 1305–06. The Court finds that the ALJ did not err in rejecting the mother's testimony without conducting a factor-by-factor analysis because the evidence did not clearly favor Plaintiff. *See Falco*, 27 F.3d at 163 (explaining that "when the evidence clearly favors the claimant, the ALJ must articulate reasons for rejecting the claimant's subjective complaints"). Remand is therefore not required on this basis, and Plaintiff's objection is overruled.

Lastly, Plaintiff asserts that the Recommendation "fail[ed] . . . to address functional equivalence." Objection 16, ECF No. 24. The Recommendation noted that Plaintiff listed and

briefed her argument of functional equivalence last, but the Magistrate Judge addressed this argument "before her other issues," explaining that "the ALJ's identification of a listing that is analogous to the claimant's unlisted impairments occurs earlier in the disability sequential analysis." Recommendation 18 n.5, ECF No. 23; *see also* Objection 16, ECF No. 24.

At step three of the Commissioner's disability inquiry, the claimant is found to be disabled if her impairments meet, medically equal, or functionally equal the severity criteria for an impairment listed in the regulations. *See* 20 C.F.R. § 416.924(a).[2]   The regulations provide "[e]xamples of impairments that functionally equal the listings," including impairments that require "24-hour-a-day supervision for medical . . . reasons." *Id.* § 416.926a(m)(5). "Though not exhaustive, this list provides insight into the severity of those limitations that might be considered 'extreme' enough to functionally equal a listed impairment." *Gonzalez v. Astrue*, No. 10 CIV. 3667 DAB JLC, 2011 WL 4024707, at *11 (S.D.N.Y. Sept. 12, 2011), *rec. adopted*, 2012 WL 3835522 (S.D.N.Y. Sept. 4, 2012).

Plaintiff argues that the ALJ's determination that her MSUD did not functionally equal a listed impairment was in error because the evidence showed that it functionally equaled Listing 111.06, since she needed "around the clock supervision of her feeding, to ensure she regularly consume[d] the special formula designed for her condition and *only consume[d] the special formula*." Objection 16, ECF No. 24 (citing to 20 C.F.R. § 416.926a(m)(5)) (emphasis added).  The Recommendation found that the ALJ erred at step three because he did "not expressly compare

---

[2]   The Commissioner utilizes a three-step analysis to determine whether a child is disabled and entitled to monthly Social Security benefits. *See* 20 C.F.R. § 416.924(a).  The third step in this analysis is whether the child's impairment "meets, medically equals, or functionally equals" a listed impairment. *See id.*

[Plaintiff's MSUD] to Listing 111.06 or any other Listing." Recommendation 20–21, ECF No. 23. *See Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007) (stating that the ALJ failed to identify the listed impairment for which claimant's symptoms failed to qualify and failed to provide an explanation as to how the conclusion was reached). However, the Recommendation concluded that the ALJ's error was harmless because substantial evidence, including Dr. Waber's treatment notes, supported the ALJ's finding that Plaintiff's MSUD did not meet, medically equal, or functionally equal a listed impairment. *Id.*; *see also Adler*, 501 F.3d at 448 (noting that court must determine if ALJ's error was harmless because "[p]rocedural perfection in administrative proceedings is not required as long as the substantial rights of a party have not been affected.") (internal quotations omitted).

While the Recommendation did not expressly address Plaintiff's argument regarding her alleged need for 24-hour medical supervision, the record does not indicate that Plaintiff required 24-hour supervision. The medical evidence showed that Dr. Waber saw Plaintiff once every six months. *See e.g.*, R. at 152, 155, 1160–63, 1354–60. During Plaintiff's second follow-up on September 8, 2010, Dr. Waber found that she "ha[d] been in good health with normal development to date." R. at 1160. By that date, her daily diet included her prescription formula, six scoops of rice cereal, one jar of sweet potato and one jar of banana baby food. *Id.* Dr. Waber found that her appetite was good, her activity schedule was "normal for her age," her growth was "acceptable," and her amino acids were within "treatment range." R. at 1164. Dr. Waber opined that she was at a "moderate" nutrition risk due to her MSUD and need for a special nutritional formula, but he had "[n]o concerns" about her development. R. at 1163.

Furthermore, Plaintiff's amino acid levels were monitored on a weekly basis and Katherine

Green ("Green"), Plaintiff's dietician, spoke with Plaintiff's mother on the phone after every testing to discuss her progress and adjust her formula and diet as needed. *See, e.g.*, R. at 1086, 1099, 1108, 1113, 1117–18, 1133, 1146, 1177–78. On various occasions, Green noted that Plaintiff was doing well and her diet included other food in addition to her prescription formula. *See, e.g.*, R. at 1147–48 (Plaintiff's diet included "six tablespoons of rice cereal, one jar of squash and one jar of sweet potato baby food."); R. at 1160 (same). The Court finds that the record does not indicate that Plaintiff's MSUD required 24-hour supervision and, therefore, the ALJ did not err by failing to find that her MSUD rose to the level of severity of the extreme conditions listed in the regulations. Accordingly, remand is not required on this basis.

After reviewing all relevant matters of record in this case, including the Recommendation and Plaintiff's objections, the Court finds that the Findings, Conclusions and Recommendation of the Magistrate Judge are correct. It is therefore **ORDERED** that Plaintiff's objections are **OVERRULED**, and the Court **ACCEPTS** the Findings, Conclusions and Recommendation of the United States Magistrate Judge. Accordingly, Plaintiff's Motion for Summary Judgment (ECF No. 19), filed July 19, 2012, is **DENIED**, Defendant's Motion for Summary Judgment (ECF No. 20), filed August 17, 2012, is **GRANTED.**

**SO ORDERED** on this **13th day of September, 2013.**

Reed O'Connor
**UNITED STATES DISTRICT JUDGE**